Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★



## MEMORANDUM OPINION

No. 04-09-00504-CV

### IN THE MATTER OF D.L.B.

From the 386th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-JUV-02638
Honorable Laura L. Parker, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Rebecca Simmons, Justice

Delivered and Filed:  May 12, 2010

AFFIRMED

D.L.B., a juvenile, appeals an order of disposition committing him to the Texas Youth

Commission. In one issue, D.L.B. contends the trial court abused its discretion because the record

indicates a continuation of probation would have been a more appropriate disposition. We affirm.

### DISCUSSION

On January 28, 2008, D.L.B. pled true to committing the offense of indecency with a child

by contact. He was placed on probation in the joint care, custody, and control of the juvenile

probation office and the Texas Department of Family and Protective Services.[1] One of the conditions

---

[1] On September 14, 2007, the Department removed D.L.B. from his mother's home due to neglectful supervision and on February 7, 2009, was named permanent managing conservator of D.L.B.

of D.L.B.'s probation was Condition No. 23: "I will cooperate fully and obey all rules of the residential placement facility (or foster home) where I am placed, and I will remain at such facility (or home) until completing the program or until authorized to leave by the Court/Juvenile Probation Department."

On June 16, 2009, the State filed its Original Motion to Modify Disposition, alleging that on April 26, 2009, and on June 3, 2009, D.L.B. failed to obey the rules of placement when he threatened and assaulted a peer, and refused to do school work. On June 26, 2009, at the hearing on the motion to modify, D.L.B. pled true to violating Condition No. 23.

According to the stipulated evidence presented at the hearing on the motion to modify, D.L.B. was originally placed at Everyday Life for residential placement. While there, he assaulted a teacher and was detained in Brazos County for assaulting a public servant. While detained, he was also charged with harassment of a public servant. He was released and returned to Everyday Life, but then was transferred to Serenity Place. Following numerous incidents at Serenity Place, D.L.B. was discharged unsuccessfully and relocated to Pegasus for continued sex offender treatment. While at Pegasus, he continued to be involved in numerous incidents including fighting, cursing, and threatening peers. Specifically, on April 26, 2009, D.L.B. assaulted another resident; on June 3, 2009, he threatened and assaulted another resident; and on June 8, 2009, he threatened yet another resident. Thus, on June 10, 2009, he was unsuccessfully discharged from Pegasus.

According to the Pegasus discharge summary, D.L.B. made minimal progress while residing in the facility. His negative behaviors included disrupting class, not following staff directives, cursing at staff and peers, making inappropriate comments, acting disrespectfully, refusing to do school work, being sexually inappropriate, and engaging in physical altercations with peers.

Although the therapist at Pegasus attempted several different approaches to meet D.L.B.'s needs, D.L.B. continued to display negative behaviors. In her written report, the juvenile probation officer recommended an indeterminate commitment to the Texas Youth Commission.

At the motion to modify hearing, the State recommended commitment to the Texas Youth Commission based on (1) D.L.B.'s unsuccessful discharge from two of the three placement facilities and (2) the fact that due to the nature of D.L.B.'s offense, the Department of Family and Protective Services had no other available placement facility to offer him. The representative from the Department also told the trial court that her agency did not have available placement for D.L.B. at the time. The juvenile probation officer stated that every time she had visited D.L.B. in detention, he had been placed in security.

D.L.B.'s attorney argued at the hearing that there was no guarantee D.L.B. would receive treatment for the underlying offense at the Texas Youth Commission. He further stated D.L.B. had promised that if he was allowed to go to another placement facility, he would not return to court for any violations. D.L.B.'s mother, who also attended the hearing, expressed her concern to the court that D.L.B. suffered from several emotional and mental disabilities and that he needed further testing to determine competency.

The court then ordered an indeterminate commitment to the Texas Youth Commission based on the stipulated evidence, D.L.B.'s three prior placements, his failure to follow rules of placement and probation, his need for the structure of the Texas Youth Commission, and the need to protect the public. D.L.B. appealed, arguing that the trial court abused its discretion because the record indicates that a continuation of probation would have been a more appropriate disposition than committing D.L.B. to the Texas Youth Commission.

Juvenile courts have a great amount of discretion in determining the suitable disposition of children who have engaged in delinquent conduct, especially in hearings to modify disposition. *In re K.B.*, 106 S.W.3d 913, 915 (Tex. App.—Dallas 2003, no pet.). "When a juvenile court modifies a disposition, the controlling issue is whether the record shows that the court abused its discretion in finding, by a preponderance of the evidence, a violation of a condition of probation." *Id.*

In his brief, D.L.B. essentially argues that he should not have been sent to the Texas Youth Commission because it is not in his best interest. He points to indications in the record that he was a troubled child who suffered from a conduct disorder, ADHD, relational problems, mood disorder, sexual abuse as a victim, and antisocial personality traits. He further focuses on his low intelligence, his need for psychoactive medications, and his removal from his mother's home due to neglectful supervision. He argues that his three prior placements were apparently arranged by the Department of Family and Protective Services, and that the Bexar County Juvenile Probation "would certainly have secured placements" for D.L.B. in addition to the three prior placements. He argues further that because of his small stature and young age, he would be better served by a continuation of probation rather than commitment to the Texas Youth Commission.

We cannot conclude, from a review of the record, that the trial court abused its discretion in committing D.L.B. to the Texas Youth Commission. D.L.B. pled true to violating a condition of his probation. The stipulated evidence included the fact that D.L.B. had been placed in three treatment facilities, two from which he was discharged unsuccessfully. The stipulated evidence shows D.L.B. engaged in violent behavior, including assaults, fighting, cursing, and threatening others. Further, the reports show he made minimal progress, was disruptive, and was sexually inappropriate. D.L.B.'s juvenile probation officer recommended commitment to the Texas Youth Commission. And there

was no evidence of any other appropriate placement available for D.L.B. Based on the record, we cannot conclude the trial court abused its discretion in committing D.L.B. to the Texas Youth Commission. We therefore affirm the trial court's judgment.


Karen Angelini, Justice